IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| JOSE A. BAEZA, | § | |
| Institutional ID No. 16900 | § | |
| Previous ID No. 2216860 | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:18-CV-00022-BU |
| | § | |
| | § | |
| | § | |
| SGT. COOPER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jose A. Baeza, proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983 on May 25, 2018. Dkt. No. 1. This case has a slightly convoluted procedural history. The Court transferred this case to the United States magistrate judge for judicial screening on May 31, 2018. Dkt. No. 9. Baeza later consented to the exercise of jurisdiction by the magistrate judge. Dkt. No. 11. United States Magistrate Judge E. Scott Frost held an evidentiary hearing on August 22, 2018, pursuant to *Spears v. McCotter*, 766 F.2d 181–82 (5th Cir. 1985). Dkt. No. 12. Thereafter, the magistrate judge dismissed as frivolous Baeza's claims that Lieutenant Amy Leleux and a Captain Allen violated his due process rights during disciplinary and grievance proceedings. Dkt. No. 13 at 3. But the magistrate judge determined that Baeza's claim for excessive force against Sergeant Adam Cooper, Officer Lyle Daniels, and Sergeant Vanessa Flores survived screening, and they were ordered to file an answer or otherwise respond to that claim. *Id*. at 2–3.

1

The Court's order for service, however, was returned undeliverable from the address Baeza had provided to the Court for himself.  Dkt. No. 17.  As a result, the magistrate judge stayed the deadline for Cooper, Daniels, and Flores to answer, and entered a Report and Recommendation, recommending to the district judge that Baeza's case be dismissed for failure to prosecute, which includes maintaining a current address with the Court.  Dkt. No. 18.

Due to a docketing error, there was a delay in transmitting the magistrate judge's Report and Recommendation to the senior district judge.  *See* Dkt.  No. 26.  In the interim, and before the senior district judge could consider that Report and Recommendation, Baeza updated his address with the Court.  *Id*.; *see also* Dkt. No. 24.  Baeza's address has changed twice since that time, and on another occasion Baeza sought to have his case-related mail sent to his mother, which was denied.  *See* Dkt. Nos. 28, 29, and 53.

The combination of Baeza's changing addresses, the docketing error, and a transition in the magistrate judge position delayed the re-issuance of an order for Cooper, Daniels, and Flores to answer or otherwise respond to Baeza's excessive force claim; however, that order was entered on January 6, 2020.  Dkt. No. 33.  And Defendants separately filed their answers on January 27, 2020, in which each Defendant raised the affirmative defense of qualified immunity.  *See* Dkt. Nos. 38, 39, and 40.[1]

The Court ordered the parties to brief the qualified immunity issue through the Defendants' motion for summary judgment, which is now before the Court.  *See* Dkt. Nos. 47, 48, 49, 53, and 54.  Because the Defendants have not consented to the exercise of jurisdiction by the magistrate judge, the undersigned enters the following findings, conclusions, and recommendations.

---

[1] Additionally, Defendants each filed a Motion to Compel Rule 7(a) Reply and to Stay Discovery, seeking for Baeza to plead specific facts in response to the Defendants' asserted defense of qualified immunity.  Dkt. Nos. 42, 43, and 44.  Baeza filed such a response on February 7, 2020.  Dkt. No. 46.

## I.  RELEVANT BACKGROUND

Baeza alleges that the Defendants violated his constitutional rights while he was a pretrial detainee at the Tom Green County jail.  Dkt. No. 1.  Specifically, Baeza alleges that Cooper used excessive force by taking Baeza to the ground and repeatedly striking him in the face and head with his knee and closed fists. *Id*. at 3–6.  This incident was apparently prompted by a verbal exchange between Baeza and jail staff as Baeza was being returned to a holding cell.  *Id*.  Baeza further alleges that Cooper "slammed [Baeza's] head into the concrete floor" while Baeza's hands were restrained behind his back.  *Id*. at 4.  Baeza also claims that Daniels and Flores assisted other officers in restraining him, though he does not specifically allege a claim of excessive force against either Daniels or Flores.  *Id*. at 3.  Baeza claims that he suffered a multitude of injuries as a result of the alleged excessive force.  *Id*. at 5.

## II.  SUMMARY JUDGMENT STANDARDS

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law," summary judgment is appropriate.  Fed. R. Civ. P. 56(a).  "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."  *Bazan ex rel. Bazan v. Hidalgo Cnty*., 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted).  A "material" fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A movant typically "bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."  *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Once the moving party meets this burden, the nonmoving party must set forth" — and support with credible evidence — "specific facts showing a genuine issue for trial and not rest upon the allegations . . . contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Such a showing must be made as to "every essential component of its case."  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

The Court must draw all reasonable inferences in favor of the nonmoving party, but only if the summary judgment evidence shows that an actual controversy exists.  *See Anderson*, 477 U.S. at 255.  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).  And while *pro se* plaintiffs are held to a less stringent pleading standard than documents drafted by attorneys and are entitled to a liberal construction, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), a *pro se* plaintiff may not "defeat a defendant's properly supported motion for summary judgment . . . without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial . . . ."  *Anderson*, 477 U.S. at 256.

## III.   QUALIFIED IMMUNITY STANDARDS

A governmental employee who is sued under 42 U.S.C. § 1983 may assert the affirmative defense of qualified immunity.  *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).  Qualified immunity protects government officials performing discretionary functions from suit and liability

4

for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Such immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In other words, "[qualified immunity] 'represents the norm, and courts should deny a defendant immunity only in rare circumstances.'" *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)).

Because an official is entitled to immunity from suit, not merely from liability, the United States Supreme Court has stressed that immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). This is typically done through motions for summary judgment filed by the defendants claiming an entitlement to qualified immunity. And "[i]n the summary judgment context, a government official need only plead qualified immunity, which then shifts the burden to the plaintiff." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).

In reviewing a motion for summary judgment based on qualified immunity, the Court conducts a two-prong inquiry. "'[T]he first step is to determine whether plaintiff alleged a violation of a clearly established constitutional right[.]'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Bazan*, 246 F.3d at 490).

And "'[t]he second step requires determining whether . . . the official's conduct was *objectively* reasonable under clearly established law existing *at the time of the incident*.'" *Id.* (emphasis in original). In other words, "whether it would [have been] clear to a reasonable [official] in the [Defendants'] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 572 U.S. 744, 758 (2014) (internal quotation marks and original

brackets omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). And this question "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). The conduct of a defendant who claims qualified immunity is to be deemed objectively reasonable "unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution." *Gates*, 537 F.3d at 419 (citation omitted).

"When a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 416–17 (5th Cir. 2019) (citing *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Thus, even where the qualified immunity defense is raised by motion for summary judgment, the Court "must first determine whether the allegations in [the] complaint are sufficient to negate [the] assertions of qualified immunity." *Fleming v. Tunica Cnty.*, 497 F. App'x 381, 388 (5th Cir. 2012) (per curiam) (citing *Backe*, 691 F.3d at 648; *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 995 (5th Cir. 1995)).

In determining whether plaintiff has met this burden, the Court must still draw all reasonable inferences in the non-movant plaintiff's favor. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). However, once properly raised, rebutting the qualified immunity defense "is a demanding standard." *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (quoting *Vincent v. City of Sulphur*, 805 F.3d 543,

547 (5th Cir. 2015)).   And doing so requires "more than bald allegations and conclusory statements." *Wicks*, 41 F.3d at 995.

## IV.  DISCUSSION

For purposes of summary judgment, the undersigned assumes that Baeza has satisfied the first prong of the Court's qualified immunity inquiry, i.e., that he has alleged what would be, accepting as true his factual allegations and drawing all reasonable inferences in his favor, a violation of a clearly established constitutional right.

The Court next turns to the second prong of the qualified immunity inquiry, i.e., whether Defendants' conduct was objectively reasonable.

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).   The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security[.]" *Id.* at 399–400.   Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that [officers] are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Brothers  v. Zoss*, 837 F.3d 513, 518–19 (5th Cir. 2016) (quoting *Graham*, 490 U.S. at 396–97).

### A.  Claim for Excessive Force Against Cooper

Baeza claims that Cooper repeatedly struck him in the head and face using his closed fists, and that Cooper "slammed [Baeza's] head into the concrete floor" while Baeza's hands were restrained behind his back.  Dkt. No. 1 at 4.   In his response to the Defendants' summary judgment motion, Baeza alleges that he "provoked no attack," "was not violent," "did not refuse any [of]

Sgt. Cooper's instructions if he gave any at all[,]" and that "his injuries resulted from a beating rendered without resistance or provocation." Dkt. No. 53 at 2, 5.  Finally, Baeza claims that he suffered a multitude of injuries as a result of the excessive force, including "a black and swollen eye, bloody nose, busted lip, chipped teeth, and numerous bumps and bruises[.]"  *Id.* at 2; Dkt. No. 1 at 5.

Baeza's testimony at his *Spears* hearing is consistent with the above allegations. Specifically, Baeza testified that as he was being led back to his cell by several officers, Cooper attempted to grab his hand and Baeza responded by telling Cooper, "I'm fine.  I know how to walk by myself."  And at that moment, according to Baeza's testimony, Cooper grabbed him by the neck while he and the other officers wrestled Baeza to the ground.  Baeza claims that he was already restrained, had "given up," and told the officers that he was not resisting.

Baeza admitted during his testimony that he was trying to "brace" himself and "prevent being taken to the ground," but denied that he was fighting, swinging, kicking, or screaming.

After being taken to the ground, Baeza testified that Cooper kneed him several times in the face while Baeza's hands were behind his back, punched him in the face with closed fists several times, repeatedly push his head to the concrete floor with both hands, and jumped on his back with his full force and weight.  In response to questioning by Magistrate Judge Frost, Baeza admitted that he has never seen the surveillance video of the incident but believes that it will corroborate his version of the events.

The Defendants' sworn affidavits and brief in support of their motion for summary judgment presents a starkly different picture of events.  *See* Dkt. Nos. 50, 51.  Defendants contend that Baeza yelled at booking staff, ignored commands from jail officers to return to his cell, and

attempted to pull away from Cooper and Daniels as they attempted to escort him back to his cell, thus prompting Cooper and Daniels to use force to take Baeza to the ground. Dkt. No. 50 at 7.

Defendants claim that Baeza resisted attempts by Cooper and Daniels to place him in hand restraints; Cooper struck Baeza in the shoulder with his knee in an attempt to secure Baeza's hands; and Cooper kneed Baeza in the face only in an attempt to prevent Baeza from biting Cooper. Dkt. No. 50 at 11; Dkt. No. 51 at 7–9. Defendants further allege that Flores placed her knee in the small of Baeza's back in an effort to help Cooper and Daniels restrain Baeza. Dkt. No. 50 at 12; Dkt. No. 51 at 16–17. Defendants deny that Baeza was hit with closed fists, that his head was slammed to the ground, or that he was ever struck or kneed while his hands were placed in restraints. Dkt. No. 50 at 11; Dkt. No. 51 at 8.

Here, the surveillance videos of the incident corroborate Defendants' sworn affidavits and incident reports, and contradict Baeza's version of events. The videos show that Baeza appeared to be yelling, flailing his arms, and acting in an agitated manner near the booking area immediately before the incident. Officers appear to approach him in a manner consistent with escorting him back to his cell. As they begin to escort Baeza, he is taken to the ground.

In the videos, the Defendants do not appear to strike Baeza with closed fists. And while it does appear that Cooper strikes Baeza twice with his knee, the video is consistent with Cooper's account that he did so only in an attempt to gain control of Baeza's arm as Baeza continued to struggle and to stop Baeza's attempts to bite Cooper. *See* Dkt. No. 51 at 3, 5, 7–9, 12, and 16. And despite Baeza's assertions that he offered no resistance to the officers' efforts to restrain him, the video shows at least five officers were required to restrain Baeza in a scuffle that lasted approximately twenty seconds.

After restraining Baeza on the ground, the video shows officers lifting Baeza to his feet and placing him in an emergency restraint chair**,** where Baeza — contrary to his sworn statements — continued to resist the officers' efforts to secure him in restraints for approximately three minutes, thus prompting Cooper and Daniels to apply "Philtrum pressure point control tactics" in an effort to restrain Baeza.  Dkt. No. 50 at 8.

The undersigned has considered Baeza's verified Complaint and sworn *Spears* hearing testimony, and, at this summary judgment stage, views that evidence in the light most favorable to Baeza and with all due deference owed a *pro se* litigant.[2]  However, when a video directly contradicts a non-movant's sworn statements, courts can assign "greater weight" to the video and, on that basis, may properly grant summary judgment.  *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).  Thus, "[w]hen one party's description of the facts is discredited by the record, [a court] need not take his word for it but should view 'the fact in the light depicted by the videotape.'"  *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Scott*, 550 U.S. at 380–81).  The Court may instead rely on the videotape of the events in evaluating the motion for summary judgment rather than the "visible fiction" offered by the non-moving party.  *Scott*, 550 U.S. at 381.

At no time does the video reveal that officers struck Baeza with closed fists or knee strikes during their attempts to secure Baeza in the emergency restraint chair.  Nor does the video reveal any visible signs of physical injury to Baeza consistent with his claims of a bloody nose, busted lip, black eye, and chipped teeth during the nearly two hours between Baeza's restraint in the

---

[2] Baeza filed a Motion for Leave to Conduct Limited Discovery (Dkt. No. 48) which the undersigned denied on this same date for the reason that the facts Baeza seeks to discovery through his proposed discovery requests are either already available to the Court through the surveillance videos of the incident and the officers' affidavits and incident reports, or would not otherwise aid the Court in resolving the qualified immunity issue. *See* Dkt. No. 61.

restraint chair and his return to his cell.  *See* Dkt. No. 50 at 8, 11.  Therefore, Baeza's version of events may be disregarded under *Scott v. Harris*.

Baeza's remaining allegations against Cooper are insufficient to negate Cooper's assertion of qualified immunity as to Baeza's excessive force claim.  Rather, Cooper and the other Defendants appear to have applied objectively reasonable force in a good faith effort to maintain or restore discipline considering the circumstances they confronted.  There is no indication that Defendants applied force to maliciously and sadistically cause Baeza harm.  The undersigned, after examining the summary judgment evidence, concludes that Cooper used no more force than reasonably necessary to restrain Baeza.  Accordingly, the undersigned recommends that the Court find Cooper to be entitled to qualified immunity, grant his motion for summary judgment, and dismiss Baeza's excessive force claim against him.

B.  Baeza's Claim Against Daniels and Flores

Unlike with Cooper, Baeza does not specifically allege facts in his Complaint to support that Daniels or Flores used excessive force against him. Instead, he identifies Daniels and Flores as "staff members helping the others restrain [him]." Dkt. No. 1 at 3.  At his *Spears* hearing, Baeza testified that he was provided Daniels's and Flores's names when he requested the identities of the officers involved in the incident.  And that he named Daniels and Flores as defendants solely because they were two of several officers involved in the incident.[3]  But Baeza fails to allege specific facts from which the Court can reasonably infer a use of excessive force by either Daniels or Flores.  Baeza's only allegation against Daniels and Flores is that they were involved in an

---

[3] The Defendants' brief in support of their summary judgment motion explains that Daniels assisted Cooper in placing Baeza in hand restraints and in securing him in the emergency restraint chair.  Dkt. No. 50 at 8. Additionally, Flores placed her knee in the square of Baeza's back to assist Defendants Cooper and Daniel in restraining Baeza.  *Id*. at 12.

incident that the Court found above does not appear to have involved an excessive use of force under the circumstances.

Baeza also claims that Daniels and Flores ultimately "chose to do nothing and failed to intervene and stop the attack [from Cooper]." Dkt. No. 53 at 3. To the extent Baeza seeks recover against Daniels and Flores under § 1983 on a theory of bystander liability or for their failure to intervene and stop Cooper, such claims also fail. At the time of the alleged events, the law was clearly established that an officer could be liable for § 1983 purposes under bystander liability, or for failure to intervene, if he or she is "present at the scene and does not take reasonable measures to protect a [detainee] from another officer's use of excessive force." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). "[W]here a pretrial detainee is allegedly the victim of a detention officer's use of excessive force," "such a claim is subject to the same analysis as a convicted prisoner's claim for use of excessive force under the Eighth Amendment." *Kitchen v. Dallas County, Tex.*, 759 F.3d 468, 477 (5th Cir. 2014), *abrogated on other grounds by Kingsley*, 576 U.S. 389. Under this standard, "a constitutional violation occurs where a detention officer uses force maliciously and sadistically for the very purpose of causing harm to the pretrial detainee rather in a good faith effort to maintain or restore discipline." *Id.* at 477 (internal quotation marks omitted).

Here, however, Baeza has failed to "plead specific facts that both allow the court to draw a reasonable inference that [the non-restraining officer] is liable [under a theory of excessive force – bystander liability] and defeat a qualified immunity defense [as related to that theory of liability]." *Backe*, 691 F.3d at 648. Moreover, the undersigned has determined above that Cooper did not use excessive force against Baeza, thus there was no basis or duty for either Daniels or Flores to intervene and stop Cooper.

For these reasons, the Court should find that both Daniels and Flores are entitled to qualified immunity, grant their motions for summary judgment, and dismiss Baeza's claims against them.

V.   CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the undersigned United States magistrate judge that Defendants' motion for summary judgment (Dkt. No. 49) be GRANTED, and that Baeza's Complaint, and all claims alleged therein, be dismissed with prejudice.

It is therefore ORDERED that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge.  This case shall hereinafter be designated as Civil Action No. 6:18-CV-00022-C.

VI.   RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IT IS SO ORDERED this 27th day of January, 2021.


_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE